ARCHIBALD GRANT v. THE COMMON COUNCIL AND THE
BOARD OF PUBLIC WORKS OF THE
CITY OF DETROIT.

[See *ante*, 262.]

*Municipal corporations—Public improvements—Approval of contract.*

1. Under the charter of the city of Detroit, the approval by the common council of contracts for the construction of any public work is not a mere matter of form, but a necessary requisite to the validity of the contract.

2. In the absence of any fraud, or any violation of the law, in respect to letting the contract to the lowest responsible bidder the common council of the city of Detroit has the right to reject a contract for the construction of a public work, and to refuse to go on with the work, which is practically a rejection of all bids.

*Mandamus.* Submitted on briefs March 4, 1892. Denied April 8, 1892.

Relator applied for *mandamus* to compel the approval of a paving contract, and the appointment of an inspector. The facts are stated in the opinion.

*Edwin F. Conely,* for relator.

*John J. Speed,* for respondents.

MORSE, C. J. Application for *mandamus.*

The relator is a resident freeholder and tax-payer of the city of Detroit. May 6, 1891, the common council of the city of Detroit passed the following resolution:

"*Resolved,* that the board of public works be, and they are hereby, directed to advertise five days for proposals for the repaving of the following streets, to wit: Gratiot avenue, from Randolph street to McDougall avenue; Grand River avenue, from Cass to railroad crossing; Jefferson avenue, from Woodward avenue to Second street; Griswold street, from Jefferson avenue to Grand River avenue; Third street, from Fort to High street; Forest avenue, from Cass to Third street; Champlain street, from Randolph to Rivard street,—with Bucyrus and Canton brick, and submit the bids to the common council before entering into any contracts."

Under this resolution the board of public works, on May 15, 1891, prepared and approved specifications for brick paving in the city of Detroit, which specifications were adopted by the common council. June 10, 1891, the board duly advertised for proposals for paving streets in said city, among them the portion of Grand River avenue described in the above resolution. June 16, 1891,

the bids were opened.  Relator was the lowest bidder
with a kind of brick which stood the test required.  His
bid was accepted by the board of public works, and a
contract entered into with him by said board for doing
the work.  This contract was transmitted to the common
council for approval, but, on motion being made to
approve the contract, it was lost on a tie vote, and a
motion to reconsider such vote was lost by a still larger
vote in the negative.

The relator subsequently, by letter addressed to the
board of public works, offered to proceed with the work,
and requested the appointment of an inspector.  To this
letter the board replied, calling attention to the provisions
of the charter of the city of Detroit (section 8, chap. 7,
Act No. 488, Local Acts of 1887), requiring that this
contract be submitted to the common council for its
approval before it could be of any force or effect.
Nothing has since been done by either of the respondents
in relation to the contract or the paving of this portion
of Grand River avenue.  It is admitted that the form of
the contract was approved by the assistant city counselor,
and there is no fault found with the bonds presented by
relator to the board of public works, but they have not
been approved or acted upon by the common council.

The relator asks for the writ of *mandamus* requiring
the board of public works to appoint an inspector, and
to take such other measures as will enable the relator to
proceed with the work under their general direction
according to his contract, and, if necessary, that the
common council be directed to confirm and approve his
contract.

The board of public works exists under, and its powers
are defined by, an act of the Legislature of this State,
entitled "An act to establish a board of public works in
and for the city of Detroit," approved April 29, 1873

(3 Laws of 1873, p. 175).  Section 12 of this act provides:

"When any public improvement (except the opening of public streets) or public work is proposed, the common council shall, before proceeding with the same, refer the matter to said board of public works, and the board last named shall forthwith proceed to examine the same, and shall, as soon as practicable, report thereon to the common council, giving detailed estimates of the costs of such works or improvements (if any cost there will be), and shall make such recommendation as said board of public works may deem expedient."

Section 18 of the same act provides:

"The paving and grading of all streets, alleys, or public places, ordered by the common council, shall be done under the supervision of the board of public works, and upon contracts and under specifications to be prepared by such board, and approved by the common council; and all moneys appropriated by the common council for such purposes shall be expended by the said board and paid from the appropriate fund provided by the common council therefor.  In the erection of public buildings and paving of streets and construction of sewers the board shall advertise for proposals to execute the work according to plan and specifications, and the board may contract with the lowest responsible bidder: *Provided*, it shall be at their option to reject all proposals made."

The charter of the city of Detroit provides (section 8, chap. 11, Local Acts of 1883, p. 629):

"No contract shall be let or entered into for the construction of any public work, or for any work to be done, or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing, or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expenses of the same; and no such work, supplies, and materials shall be paid for, or contracted to be paid for, except out of the proceeds of the tax or the assessment thus levied."

It is very plain that the approval of the common

council is not a mere matter of form, but a necessary requisite to the validity of the contract. In this case, the common council seems to have abandoned the work, as nothing has been done towards the paving of the portion of Grand River avenue, covered by relator's contract, since the refusal to approve his contract,—a period of over six months. It must be conceded, I think, that the common council, after bids have been received and contract made by the board of public work, would have the right to abandon the proposed paving, or to change the manner of it; and the power to reject any contract seems to be given this body, as their approval is made necessary before any work can be commenced under it. It is not necessary to determine in this case whether the common council could refuse to approve relator's contract (he being the lowest responsible bidder), and then go on with the work by authorizing the board of public works to enter into a contract with a higher bidder, and approving the same. Practically, in this case, all the bids have been rejected, and the common council declines to go on with the paving of the street.

It is contended by relator's counsel that the authority to reject all the proposals is vested in the board of public works, and not in the common council; that it is the policy of the statute to confer upon the board of public works everything in the nature of administration, and to confine the common council to its sphere of legislative action. But the power of the common council goes further. No paving can take place unless the money for the same is appropriated by the council for that purpose, and no work can be done except under a contract approved by the same body. The power to approve would seem necessarily to imply the power to reject; and the only provision that appears to hamper the action of the common council in this matter is the provision

that the contract must be let to the lowest responsible bidder. In the absence of any fraud, or any violation of the law, in respect to the lowest responsible bidder, it seems clear to me that the common council has the right to reject a contract, and to refuse to go on with the work. This practically is the rejection of all bids.

The writ must be denied, with costs.

The other Justices concurred.